# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-40763

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RODNEY DILL,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:25-CR-28-1

———————————————————

United States Court of Appeals
Fifth Circuit
**FILED**
August 5, 2026
Lyle W. Cayce
Clerk

Before ELROD, *Chief Judge*, and CLEMENT and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

Rodney Dill pleaded guilty to one count of receiving child pornography. The district court sentenced him to 60 months of incarceration and ordered him to pay restitution to the minor victim's family. On appeal, Dill challenges only the restitution award. We AFFIRM.

———————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-40763

I

A

At the time of the offense, Dill was a fifty-nine-year-old man living in Pinehill, New Mexico. In March of 2025, Dill encountered then-seventeen-year-old D.S.G. in an online chatroom, and they began messaging. Shortly thereafter, two notable exchanges occurred. First, Dill raised the age difference between the two, confirming that D.S.G. was seventeen and he fifty-nine, before he expressed that he wanted "this to be very sexual." Second, after learning D.S.G.'s age, Dill consented to receiving three images of the minor that constituted child pornography. Dill responded encouragingly upon receipt of the images. Between March 3 and March 10, 2025, Dill and D.S.G. exchanged over 1,800 messages.

The two began discussing plans for D.S.G. to leave his home in Texas to live with Dill in New Mexico. After D.S.G. expressed that the only way he could stay with Dill would be if he "disappear[ed]," Dill offered to travel to Texas to pick up D.S.G. On March 10, 2025, Dill met D.S.G. at a local store in Port Lavaca, Texas, and D.S.G. went with him, travelling back to Dill's residence in New Mexico.

That same day, D.S.G.'s mother reported him missing to area law enforcement. D.S.G.'s mother, father, and sisters missed work and school to search for him. They scoured "ditches" and "nearby waters," printed flyers, posted on social media, and "drove countless miles" looking for D.S.G.

The FBI commenced an investigation into D.S.G.'s disappearance on March 12, 2025, and gained access to D.S.G.'s social media accounts and email. At that point, investigators found D.S.G.'s messages with Dill.

The next day, investigators arrested Dill at his residence pursuant to a warrant and located D.S.G. there. Agents interviewed both Dill and D.S.G. While Dill admitted that he had been "looking for a relationship online with a younger male," he initially declined knowing that D.S.G. was under eighteen and that he and D.S.G. had exchanged sexually explicit photographs. However, Dill later admitted that he knew D.S.G. was underage and that the two had exchanged "likely only one image" each.

B

A grand jury indicted Dill on one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). Dill pleaded guilty to the indictment without a plea agreement.

The probation officer prepared a presentence investigation report (PSR), which determined that restitution was mandatory pursuant to 18 U.S.C. § 2259(b). The PSR calculated that Dill was responsible for $8,000 in restitution, payable to D.S.G.'s mother. The PSR relied on documentation and a victim impact statement from D.S.G.'s mother, reporting $3,000 in lost wages and $5,000 for relocation costs "pursuant to the defendant's relative role in the causal process of the victim's losses."[1]

At sentencing, D.S.G.'s mother read her victim impact statement aloud. She stated that D.S.G. was missing for days and that she, her husband, and her daughters took off work and school to look everywhere for him, all while she wondered whether he was still alive. When D.S.G. returned home, he was "different, a sadness and hurt that is hard to put into words," he was anxious, he "cried and shook" when asked about the events, and he had

---

[1] The PSR further noted that the $8,000 figure was calculated by deducting a $5,000 offset from the Crime Victim's Compensation Board. The total calculated loss was $13,000 in moving expenses and lost wages.

trouble sleeping and nightmares. She testified that, as a result of the offense, D.S.G. missed much of his junior year of high school, and he had to finish his classes at home. She explained that the experience "was so hard that [her] family had to pick up and move" for a fresh start. In conclusion, she asked the court for justice and "for the maximum allowed sentence by law."

Dill's counsel argued that the proposed restitution amount of $8,000, reflecting D.S.G.'s family's lost wages and relocation expenses (not D.S.G.'s), was improper and not proximately caused by Dill's crime of conviction. Specifically, counsel argued that D.S.G. "did not get into the vehicle because of the sending and receipt of images" because "the pictures were not used as a point of coercion to get [D.S.G.] to run away." Counsel argued that D.S.G.'s mother's losses and "trauma" were "related to [D.S.G.] disappearing from her," not the sending of the photos. Thus, Dill argued, "the harm that was in relation to [D.S.G.] running off to New Mexico . . . was not caused by the crime that" Dill committed. The Government countered that the lost wages and moving expenses were specifically recoverable under 18 U.S.C. § 2259 and were properly considered because they happened in "close proximity" to the offense. The Government also pointed out that Dill's encouragement and "receipt of [the] child pornography then proceeded into more conversations . . . and then led to the defendant transporting the minor across state lines."

After hearing extensive argument from counsel, the district court overruled Dill's objection, finding that "the sending of the images and the running away from home are inextricable" and "part of the same fact pattern." The district court adopted the PSR as its findings of fact and ultimately sentenced Dill to 60 months of incarceration, 15 years of supervised release, and ordered $8,000 in restitution to the family. Dill timely appealed.

## II

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a restitution order's legality *de novo* and its amount for abuse of discretion. *United States v. Villalobos*, 879 F.3d 169, 171 (5th Cir. 2018).

## III

First, Dill argues that the district court violated his Sixth Amendment rights when it awarded restitution based on judge-found facts to which Dill did not admit in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Dill concedes that this challenge is foreclosed, and he raises it solely to preserve the issue. *See United States v. Caudillo*, 110 F.4th 808, 810–11 (5th Cir. 2024); *United States v. Rosbottom*, 763 F.3d 408, 419–20 (5th Cir. 2014); *United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012).

## IV

Second, Dill advances the same argument he made at sentencing: that his solicitation and receipt of child pornography did not proximately cause D.S.G.'s family's lost income and moving expenses, the basis of the $8,000 restitution award.[2] *See Paroline v. United States*, 572 U.S. 434, 448 (2014) (holding that restitution is appropriate "only to the extent the defendant's offense proximately caused a victim's losses"). The Government argues that the district court's restitution order was proper because it found that Dill's enthusiastic receipt of the child pornography was "inextricably linked" with

---

[2] As the Government points out, Dill does not argue that the lost wages and moving expenses are not recoverable expenses, nor does he argue that D.S.G.'s family members are not qualifying victims.

his encouragement of D.S.G. to leave home, the minor's decision to do so, and the harms incurred by D.S.G. and his family.

Dill's conviction for receiving child pornography subjects him to mandatory restitution under 18 U.S.C. § 2259(a). *See* 18 U.S.C. § 2259(c)(3). "The order of restitution must cover 'the full amount of the victim's losses as determined by the court,' § 2259(b)(1), and the 'victim' includes a minor's guardians." *Villalobos*, 879 F.3d at 171 (quoting 18 U.S.C. § 2259(c)). The "full amount of the victim's losses" is comprised of "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." § 2259(c)(2). The statute specifically enumerates that a restitution award may include "necessary transportation, temporary housing, and child care expenses," "lost income," and "any other relevant losses incurred by the victim." *Id.* at § 2259(c)(2)(C)–(D), (F). The Government bears the burden of proving any victim's loss amount[3] and that the "losses are the proximate result of the defendant's offense conduct." *United States v. Limon*, 159 F.4th 327, 337 (5th Cir. 2025).

In this context, proximate cause "generally refers to the basic requirement that . . . there must be some direct relation between the injury asserted and the injurious conduct alleged." *Paroline*, 572 U.S. at 444 (alteration in original) (internal quotation marks and citation omitted). It "is often explicated in terms of foreseeability or the scope of the risk created by

---

[3] We note that the amount of the restitution order was supported by ample documentation, as the Government informed the court that D.S.G.'s family submitted calculations of "transportation costs, such as gas," a "moving truck," and "pay stubs" for the lost wages. *See United States v. Etheridge*, No. 22-40516, 2023 WL 5347294, at *4 (5th Cir. Aug. 21, 2023) (explaining that the Government has the burden to "provid[e] the court with enough evidence to estimate the victim's losses with some reasonable certainty" (emphasis omitted)).

the predicate conduct." *Id.* at 445. District courts have ample "discretion in fashioning a restitution order" because they have the difficult responsibility of evaluating the defendant's conduct "in light of the broader causal process that produced the victim's losses." *Id.* at 459 (quoting 18 U.S.C. § 3664(a)). The process is not a "precise mathematical inquiry" but requires "the use of discretion and sound judgment." *Id.*

"Once we have determined that an award of restitution is permitted by the appropriate law," as is the case here, "we review the propriety of a particular award for an abuse of discretion." *United States v. Sheets*, 814 F.3d 256, 259 (5th Cir. 2016); *United States v. Halverson*, 897 F.3d 645, 653–54 (5th Cir. 2018) (assessing a district court's *Paroline* analysis for abuse of discretion).

The district court did not abuse its discretion in awarding $8,000 in restitution, determining that Dill's offense conduct proximately caused D.S.G.'s family's losses. In fashioning the award, the district court relied on D.S.G.'s mother's testimony, which was sourced from her victim impact statement detailing her family's experience searching for D.S.G., missing work and school to do so, and that the traumatic experience prompted the family to relocate.

Dill went online looking for a relationship with a "younger male." Dill knew that D.S.G. was seventeen years old, and yet stated that he "want[ed] this to be very sexual." After Dill expressed desire for sex, D.S.G. offered to send Dill images of himself that constitute child pornography. This is a critical moment in the causal chain. Instead of refusing the offer, Dill enthusiastically accepted the child pornography. Dill responded to the images with sexually explicit messages and images of himself. That led to D.S.G. requesting to come and stay with Dill, Dill offering to help D.S.G. "disappear," and ultimately to Dill transporting D.S.G. to New Mexico

without the knowledge of D.S.G.'s family.  The district court did not abuse its discretion in determining that the losses of D.S.G.'s family are the "proximate result of the defendant's offense conduct." *Limon*, 159 F.4th at 337.

The court adopted the PSR's factual findings, heard extensive argument from counsel as to the proximate cause inquiry and the circumstances of the offense, and asked questions before rejecting the defense's position, finding that "the sending of the images and the running away from home are inextricable" and that "they're part of the same fact pattern."  The district court appropriately "relied on [the] evidence" and "the nature of the crime" to assess proximate cause and to calculate the relevant losses.  *United States v. Rubalcava*, 160 F.4th 664, 671 (5th Cir. 2025).

At bottom, the restitution order was not based on "a decisionmaker's caprice," *Paroline*, 572 U.S. at 462 (citation omitted), and the district court reasonably ascertained the causal relationship between Dill's offense conduct, D.S.G.'s decision to run away from home with Dill, and D.S.G.'s family's losses.  The district court did not reversibly err.  *See Halverson*, 897 F.3d at 654–55.

V

For the foregoing reasons, the district court's judgment is AFFIRMED.